EXHIBIT
A

## IN THE CIRCUIT COURT OF LOUISA COUNTY, VIRGINIA

Civil Case No. 109CL2500005300

## COMPLAINT and DEMAND FOR JURY TRIAL

Kevin Rubink, 862 S Lake Shore Drive, Louisa, VA 23093
**Plaintiff** (703) 772-6673

v.

1. John Fijal, 339 Saucer Way, Chapin, SC 29036;
2. Brian C. Douglas, 309 Saucer Way, Chapin, SC 29036;
3. Paul LaRosa, 213 John Lindler Road, Chapin, SC 29036;
4. William Sipes, 343 Dolly Horn Lane, Chapin, SC 29036;
5. Erin Norris, 349 Dolly Horn Lane, Chapin, SC 29036;
6. Renee Blair, 355 Dolly Horn Lane, Chapin, SC 29036;
7. Scott Blair, 355 Dolly Horn Lane, Chapin, SC 29036;
8. Lisa Noto, 361 Dolly Horn Lane, Chapin, SC 29036;
9. Angela Watkins, 346 Dolly Horn Lane, Chapin, SC 29036;
10. Laura Brooks, 340 Dolly Horn Lane, Chapin, SC 29036;
11. Robert Barwick, 335 Brookridge Drive, Chapin, SC 29036;
12. Todd Grosh, 150 Sunsation Drive, Chapin, SC 29036;
13. Eric Enghauser, 156 Sunsation Drive, Chapin, SC 29036;
14. Leslie Ellison, 108 Sunsation Drive, Chapin, SC 29036;
15. Morgan Lafferty, 132 Sunsation Drive, Chapin, SC 29036;
16. Scott Smith, 163 Sunsation Drive, Chapin, SC 29036;
17. Lynn Smith, 163 Sunsation Drive, Chapin, SC 29036;
18. Sarah LaBerge, 122 Sunsation Drive, Chapin, SC 29036;
19. Kevin Ruas, 1850 E. Third Street, Ste 100, Charlotte, NC 28204;
20. Brownlee Whitlow & Pratt, PLLC. 1850 E. Third Street, Ste 100, Charlotte, NC 28204;

**Defendants**

## COMPLAINT FOR CIVIL CONSPIRACY

**COMES NOW** the Plaintiff, Kevin Rubink, pro se, and hereby files this **Complaint** against an astounding <u>20 Defendants</u> John Fijal, Brian C. Douglas, Paul LaRosa, William Sipes, Erin Norris, Renee Blair, Scott Blair, Lisa Noto, Angela Watkins, Laura Brooks, Robert Barwick, Todd Grosh, Eric Enghauser, Leslie Ellison, Morgan Lafferty, Scott Smith, Lynn Smith, Sarah LaBerge, Kevin Ruas, and Brownlee Whitlow & Pratt, PLLC (collectively "Defendants") for a premeditated racist conspiracy of depravity, hate, defamation, harassment, stalking, and IIED. Plaintiff alleges as follows:

1

## JURISDICTION AND VENUE

1. Plaintiff Kevin Rubink resides in Louisa County, Virginia at 862 S Lakeshore Drive, Louisa, VA 23093.
2. Defendants are residents of South Carolina and North Carolina but committed intentional tortious acts against Plaintiff, causing harm within the jurisdiction of this Court.
3. This Court has personal jurisdiction over the Defendants pursuant to Virginia's long-arm statute, **Va. Code § 8.01-328.1(A)(3)**, as their acts caused tortious injury in Virginia.
4. Venue is proper in this Court pursuant to **Va. Code § 8.01-262** because Plaintiff resides in Louisa County, and the harm was and primarily suffered within this jurisdiction.
5. **Participation in a Conspiracy and Reputational Harm:** Attorney Kevin Raus and Brownlee Whitlow & Pratt, PLLC, are personally responsible for their participation in a scheme intended to harm Plaintiff's legal interests and damage his professional reputation through the dissemination of harmful, false, and defamatory statements. **Under Virginia legal theory,** defamatory statements that result in reputational damage can give rise to legal liability, particularly when such statements are made with malicious intent and reckless disregard for the truth. This conduct not only constitutes professional misconduct but also supports the existence of a broader conspiracy to inflict harm upon Plaintiff through coordinated, unlawful actions. As the harm was inflicted upon Plaintiff in Virginia, jurisdiction is proper in Louisa County, VA, where the conspiracy, reputational damage, harassment, stalking, and associated emotional distress occurred.

## FACTUAL ALLEGATIONS

5. Plaintiff is a US Navy Combat Veteran and lifelong professional tennis player, coach, mentor, and advocate for the protection and development of young athletes including children ages five and up.
6. As a Professional Tennis Coach, Mentor, and Consultant of child athletes ages 5 and up, Plaintiff is required to live with families (employers), chaperone young children for days, weeks, and even months.
7. Defendants, acting in concert, engaged in a concerted campaign of **CHARACTER ASSASINATION** against Plaintiff, knowingly making fraudulent statements and harmful false defamatory accusations of criminal conduct with the intent to permanently damage his reputation, career, finances, mental well-being, and enjoyment of life.
8. Defendants conspired to spread falsehoods regarding Plaintiff's professional integrity, falsely impugning his legal standing, ability to mentor, coach, chaperone, and protect young athletes, thereby undermining his professional standing and employability.
9. As part of their malicious scheme, the Defendants deliberately made and distributed "MIRROR IMAGE and DUPLICATIVE" false statements and allegations designed to tarnish Plaintiff's credibility and moral character. This pattern of conduct represents a **3RD wave** OF TARGETED REPUTATIONAL AND CHARACTER ATTACKS by Defendants who have engaged in a sickening campaign of hate since January 2023. Defendants have established a clear pattern of coordinated efforts to defame Plaintiff with **3rd wave**, a MALICIOUS, RECENT and SEPARATE INSTANCE SPREE of harmful, fraudulent statements and false accusations of criminal conduct nefariously authored by South Carolina attorney Jay Thompson in October 2024, then signed by Defendants

under oath and penalty of perjury, constituting perjury, collusion, and a conspiracy of disgusting hate aimed at permanently ruining Plaintiff's professional reputation, good name, livelihood, finances, career, and emotional well-being.

10. Plaintiff feels as though he is under constant coercion, intimidation, and threats by the Defendants, who have engaged in a premeditated and malicious campaign of defamation, harassment, stalking, and reputational destruction. The Defendants' concerted efforts, marked by collusion and a deliberate intent to cause lasting harm, continue to inflict severe emotional and psychological distress upon Plaintiff. The criminal nature of this vicious smear campaign constitutes an unlawful and oppressive attack, aimed at silencing Plaintiff and irreparably damaging his professional and personal standing.

11. Defendants' coordinated actions were premeditated, intentional, immoral, outrageous, and malicious, evidencing a reckless disregard for the truth and Plaintiff's well-being.

12. The defamatory conduct has resulted in mental anguish, emotional distress, loss of sleep, anxiety, depression, loss of vision, diminished quality of health and life, and irreparable damage to Plaintiff's reputation, employability, livelihood, and career.

## CAUSES OF ACTION

## COUNT I: CIVIL CONSPIRACY (Va. Code § 18.2-499 & § 18.2-500) [ON ALL TORTS]

11. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

12. Defendants engaged in a COORDINATED EFFORT to spread falsehoods with the premeditated immoral intent to cause Plaintiff's professional and personal ruin.

13. Additionally, **Virginia law** holds that individuals who conspire to defame another and act in concert to propagate falsehoods are jointly and severally liable for the harm they cause. See *Gallop v. Sharp*, 179 Va. 335, 19 S.E.2d 84 (1942). Because Defendants ACTED IN CONCERT WITH SHARED MALICIOUS INTENT, each Defendant bears responsibility for the full extent of the reputational and emotional harm inflicted upon Plaintiff.

14. The Defendants' defamatory statements and coordinated actions amount to a deliberate, premeditated effort to inflict irreparable harm upon the Plaintiff. Their calculated efforts to disseminate falsehoods, knowing their statements were untrue, exemplify willful and wanton misconduct that **Virginia Courts** recognize as actionable defamation per se. Further, their conduct constitutes a civil conspiracy **under Virginia law,** wherein two or more parties agreed to engage in unlawful acts or lawful acts by unlawful means, directly causing harm to the Plaintiff. See *Dunlap v. Cottman Transmission Sys., Inc.,* 287 Va. 207, 754 S.E.2d 313 (2014).

15. **Vicarious Liability and Firm Responsibility:** Defendant Brownlee Whitlow & Pratt, PLLC, the firm itself, bear responsibility for ensuring that all attorneys in the firm adhere to ethical standards, as outlined in Rule 5.1 of the North Carolina Rules of Professional Conduct. **Under Virginia legal theory,** an employer or principal may be held liable for the actions of its agents or employees **UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR.** Defendant Brownlee Whitlow & Pratt, PLLC, as Defendant Kevin Raus's employer, had a duty to supervise and prevent his unethical conduct. By failing to take corrective action, the firm ratified and implicitly endorsed his misconduct, making it directly and vicariously liable for the harm caused. Furthermore, **under Virginia civil**

3

**conspiracy law,** entities that conspire to engage in unlawful acts are jointly liable for damages resulting from those acts, further establishing the firm's legal responsibility in this matter.

- The firm failed to take corrective action despite being made aware of the professional misconduct of its attorneys.
- By ratifying or failing to address the misconduct, both Defendants Kevin Raus and his firm, Brownlee Whitlow & Pratt, PLLC have engaged in further violations of professional ethics.

16. As a direct result of Defendants' conspiracy, Plaintiff has suffered irreparable professional, personal, and emotional harm.

**COUNT II: DEFAMATION PER SE (LIBEL AND SLANDER) (Va. Code § 8.01-247.1)**

15. Defendants knowingly made fraudulent statements and false accusations of criminal conduct about Plaintiff that were published and widely disseminated as part of a **PREMDITATED SMEAR CAMPAIGN DRIVEN BY HATE,** collusion, and a malicious intent to irreparably damage his professional reputation, credibility, and career.
16. The false statements were made with actual malice, premeditation, and reckless disregard for the truth, as part of a calculated smear campaign orchestrated by Defendants to inflict maximum reputational and emotional harm on Plaintiff.
17. Defendants knowingly made solicited false defamatory statements outside of judicial proceedings, later authorizing them to be publicly published, further authorizing them to be fraudulently offered as false evidence (perjury) in court, MERELY AS CHARACTER ASSASINATION against Plaintiff, **thereby stripping them of any privileged status under Virginia law.**
18. Moreover, statements made outside of judicial proceedings **do not afford absolute privilege under Virginia law,** particularly when introduced as false evidence for an IMPROPER USE, as in this case, a civil conspiracy to defame, harass, stalk, and intimidate Plaintiff in plain sight. See *Penick v. Ratcliffe*, 149 Va. 618, 140 S.E. 664 (1927) (holding that defamatory statements made with malice and not pertinent to judicial proceedings lack privilege) Especially when such statements made outside of judicial proceedings are solicited, paid for, bias, vague, non-credible, lack first-hand knowledge, fraudulent, false, serve no legitimate purpose, and are merely accusatory.
19. Defendants, ACTED IN CONCERT, knowingly propagated these falsehoods in a deliberate effort to destroy Plaintiff's credibility, good name, professional standing, and livelihood, exhibiting a callous and hate-driven disregard for the consequences of their actions.
20. Defendants' actions were not only malicious but also motivated by a retaliatory and revenge-driven intent, seeking to punish Plaintiff for perceived grievances and past conflicts that occurred in January – May 2023. Defendants' COORDINATED EFFORTS to defame, harass, and stalk Plaintiff demonstrate a clear pattern of premeditated and collusive behavior, designed to exact personal vengeance through calculated reputational destruction.

4

21. Furthermore, by authorizing a representative or agent to speak on their behalf in open court, on the record, and in written legal pleadings, Defendants effectively adopted and ratified a nefarious declarant's false statements as their own, making them non-hearsay under **Virginia Rule of Evidence 2:801(D)(2)** as statements of a party opponent and subject to cross examination. This deliberate endorsement of defamatory statements and false allegations constitutes an intentional and malicious perpetuation of harmful falsehoods. Defendants' conduct certified a **MULTITUDE OF DEFAMATION** uttered and published in the previous **1st and 2nd waves** of targeted character assassination that occurred from January – May of 2023, in a prior orchestrated blackmail and harassment scheme that ruined Plaintiff's professional reputation, professional relationships, and livelihood of a thriving small business, Chapin Sports Academy. **Under Virginia law,** such statements, once affirmed by an authorized agent, are attributable to all Defendants as a collective effort to sustain their defamatory smear campaign, further evidencing their collusion and retaliatory intent.

22. Plaintiff has suffered and will suffer ongoing reputational harm, extensive economic damage, and significant emotional distress as a direct and foreseeable result of Defendants' coordinated and malicious actions. Defendants' coordinated and malicious smear campaign was designed not only to DECIMATE Plaintiff's credibility, ANNIHILATE his professional standing but also to inflict long-term emotional and financial hardship, demonstrating an egregious and reckless disregard for Plaintiff's rights and well-being.

23. In fact, Defendant Paul LaRosa was specifically hired, financially compensated for fabricating and disseminating fraudulent statements and egregiously false defamatory accusations of criminal conduct against Plaintiff. **Such deliberate and premeditated actions, undertaken with the explicit intent to cause reputational harm, further reinforce the absence of any legal privilege under Virginia law. Under Virginia Rule of Evidence 2:803 and established case law such as *Penick v. Ratcliffe*, 149 Va. 618, 140 S.E. 664 (1927),** defamatory statements made with malice and beyond the scope of legitimate judicial proceedings do not qualify for absolute or qualified privilege. Moreover, the introduction of these false statements into the public sphere and subsequent presentation as fraudulent evidence nullifies any claim of legal protection. By knowingly engaging in this defamatory conspiracy, LaRosa and the other Defendants remain vicariously liable for their collective actions under **Virginia's legal framework** for defamation and civil conspiracy.

24. In fact, Defendant Kevin Ruas was solicited to make fraudulent statements and false harmful accusations of criminal conduct, engaging in willful and malicious defamation against Plaintiff. **Under Virginia Rule of Evidence 2:801(D)(2),** any statements he made at the behest and in collusion with other Defendants, and subsequently endorsed or adopted by them, are considered admissions by a party opponent, further implicating all Defendants in the defamatory conspiracy. Additionally, since these statements were made outside the protection of judicial proceedings and later published as false evidence, **they do not qualify for any privilege under Virginia defamation law**, as established in *Penick v. Ratcliffe*, 149 Va. 618, 140 S.E. 664 (1927). This deliberate and coordinated effort to impugn Plaintiff's reputation constitutes actionable defamation and civil conspiracy **under Virginia law.**

25. As background information in regard to paragraphs 20& 21, in April 2019, Plaintiff founded Chapin Sports Academy, a grass roots safe haven for hundreds of children ages 5 and up, with a mission to teach tennis, mentor, and protect them while giving back to the community and veterans. But in May 2023, Defendants John Fijal, Brian C. Douglas, William Sipes, Erin Norris, Renee Blair, Scott Blair, Lisa Noto, Angela Watkins, Laura Brooks, Robert Barwick, Todd Grosh, Eric Enghauser, Leslie Ellison, Morgan Lafferty, Scott Smith, Lynn Smith, Sarah LaBerge blackmailed, harassed, stalked, and threatened to kill Plaintiff and his wife three times, forcing them to move out of the state of South Carolina, close Chapin Sports Academy and relocate to a gated community in Louisa, Virginia, Blue Ridge Shores.

26. To reiterate, because the Defendants could not control their entitled and corrupted minds, depravity, and hate, in October 2024 they recruited more individuals, Defendants Paul LaRosa, Kevin Raus, and Brownlee Whitlow & Pratt PLLC to unleash the 3rd **wave** of NEW, MALICIOUS, RECENT and SEPARATE INSTANCE conspiracy, defamation, harassment, stalking, and IIED, even though Plaintiff resided in Louisa, VA. This uncontrollable depravity is apparent and in plain sight with no end in sight as Plaintiff believes wherever he goes, Defendants will strike and lash out with hate and defamation.

## COUNT III: HARASSMENT AND STALKING (Va. Code § 18.2-60.3)

24. Defendants engaged in a pattern of harassment and stalking directed at Plaintiff, including repeated defamatory statements, false and fraudulent accusations of criminal conduct, and other malicious actions.

25. Defendants' actions served no legitimate purpose and were merely intended to harass, stalk, intimidate, threaten, and cause Plaintiff significant fear, depression, and financial distress.

26. As a direct result of Defendants' harassment and stalking, Plaintiff has suffered fear, anxiety, nightmares, mental anguish, depression, diminished health, and loss of enjoyment of life.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

27. Plaintiff has endured such extreme emotional distress—including overwhelming fear and profound depression—that it feels as though he has a gun to his head, trapped in a state of perpetual psychological torment. The severity of his distress is not merely subjective but objectively verifiable, manifesting in symptoms that severely impair his daily life and mental well-being. The Defendants' malicious conduct has created an environment of unbearable pressure, leaving the plaintiff in a state of constant dread, as if his very existence is under imminent and inescapable threat.

Pursuant to *Womack v. Eldridge*, 215 Va. 338, 342 (1974), is a key Virginia case that sets forth the necessary elements for a claim of **Intentional Infliction of Emotional Distress (IIED)**. The Virginia Supreme Court in *Womack* explicitly outlined the four elements required to establish an IIED claim:

1. **The conduct must be intentional or reckless.**

2. **The conduct must be outrageous and intolerable, offending generally accepted standards of decency and morality.**
3. **There must be a causal connection between the wrongful conduct and the emotional distress.**
4. **The emotional distress must be severe.**

And **under Virginia law,** Plaintiff's claim for Intentional Infliction of Emotional Distress (IIED) exceeds these requirements.

28. Plaintiff specially alleges Defendant's conduct was collusion, a conspiracy, defamatory, malicious, in reckless disregard for the truth, and merely intended to harass, stalk, intimidate, threaten, and cause Plaintiff significant fear, depression, and sever emotional harm. See *Almy v. Grisham*, 273 Va. 68 (2007) – **IIED Claim was upheld for False Accusations and Conspiracy.**
29. The conduct was outrageous and intolerable due to the racist nature;
30. Plaintiff alleges Defendants' wrongful, immoral, **hate, and racist conspiracy** caused the emotional distress;  (Prior to the October 2024 conspiracy, defamation, harassment, and stalking Defendants admit to calling Plaintiff a **"Boy!", a racist slur,** admit to **racist death threats "JOIN OR DIE,"** admit a death threat with a gun (authenticated by law enforcement), and there are authenticated pictures / videos of harassment and stalking, including a threat to run Plaintiff over with a truck and Defendants calling Plaintiff a **"mother fucker!"**); See *Gaiters v. Lynn*, 831 F.2d 51 (4th Cir. 1987), racist threats and harassment were deemed sufficiently outrageous. **IIED Claim Upheld for Racial Harassment and Conspiracy.**
31. The emotional distress was severe due to the **SHEER NUMBER (20) of CONSPIRATORS,** i.e., Defendants, the amount of defamation, harassment, stalking and the nature of it as it impugns Plaintiff for the rest of his life and hinders him in his lifelong profession of coaching, mentoring, chaperoning, and protecting young athletes and children.  The emotional distress suffered by Plaintiff is so severe that no reasonable person should be expected to endure it, as required under Virginia law. See *Womack v. Eldridge*, 215 Va. 338 (1974) – **IIED Claim Upheld for Harassment and Deception.**
32. Defendants' actions were premeditated, intentional, and malicious, undertaken with both the deliberate intent to cause, and the reckless disregard for the truth causing severe emotional harm to Plaintiff.
33. Defendants' conduct was extreme, immoral, outrageous, and atrocious exceeding all possible bounds of decency and utterly intolerable in a civilized society. **Virginia law recognizes** that conduct is "outrageous and intolerable" when it is so egregious that it offends against the "generally accepted standards of decency and morality." *Supervalu, Inc. v. Johnson*, 276 Va. 356, 370 (2008). Therefore, **Under Virginia law,** Plaintiff's claim for intentional infliction of emotional distress far exceeds **"generally accepted standards of decency."**
34. As a direct and proximate result of Defendants' extreme immoral conduct, Plaintiff has experienced ongoing and substantial harm, including but not limited to emotional suffering, mental anguish, fear, anxiety, panic attacks, humiliation, loss of sleep, loss of appetite, loss of ability to concentrate, loss of vision, depression, financial worry, diminished quality of life, and loss of enjoyment of life.

35. The emotional distress suffered by Plaintiff is not mere annoyance, hurt feelings, or indignity, but rather exceeds the "severe distress" threshold required **under Virginia law.** See *Kondaurov v. Kerdasha*, 271 Va. 646, 658 (2006).

36. **Failure to Report Professional Misconduct and Legal Consequences Under Virginia Law:** Defendant Brownlee Whitlow & Pratt, PLLC failed to report the unethical and improper conduct of Defendant Kevin Raus, despite an obligation to do so under Rule 8.3 of the North Carolina Rules of Professional Conduct. Additionally, **under Virginia legal theory,** failure to act in response to known misconduct can support claims of conspiracy, defamation, harassment, stalking, and IIED. By knowingly allowing harmful and defamatory statements to persist, Defendants Brownlee Whitlow & Pratt, PLLC and Kevin Raus engaged in a civil conspiracy to damage Plaintiff's reputation and cause severe emotional distress. **Under Virginia law,** defamation encompasses false statements made with reckless disregard for the truth, while IIED requires extreme and outrageous conduct resulting in severe emotional harm. Their failure to report and mitigate such conduct further implicates them in a broader pattern of unlawful activity warranting legal and disciplinary action. See *Almy v. Grisham*, 273 Va. 68 (2007) – **IIED Claim was upheld for False Accusations and Conspiracy.**

## RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendants for:

37. Compensatory damages in the amount of $100,000 for each defendant;

- Enter judgment in favor of Plaintiff on all counts, recognizing Defendants' premeditated, orchestrated, and conspiratorial efforts to irreparably harm Plaintiff;

38. Punitive damages in an amount to punish and deter such conduct;

- Award punitive damages due to **SHEER NUMBER (20)** of Defendants' egregious willful, intentional, malicious, and collusive immoral misconduct, intended to obliterate Plaintiff's livelihood, credibility, career, finances, mental and physical health, and overall quality and enjoyment of life;
- Issue an injunction deterring and preventing Defendants from continuing their coordinated smear campaign of defamation, harassment, stalking, fraudulent statements, false accusations of criminal conduct, and intentional harm against Plaintiff;

39. Costs, attorneys' fees, and any further relief this Court deems just and proper;

- Award Plaintiff costs, including attorneys' fees, attorneys' consultant fees, court costs, and all expenses incurred as a direct result of Defendants' wrongful actions;

40. Grant such further relief as this Court deems just and proper to rectify the Defendants'
    depravity and hate-driven conduct.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Kevin Rubink
Pro Se Plaintiff
862 S Lakeshore Drive
Louisa, VA 23093

Dated: 2/18/25